IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | |
|---|---|
| TISHA DICKSON, | ) |
| | ) |
|     Plaintiff, | ) |
| | )   CIVIL ACTION NO. |
|     v. | )    2:04cv1050-T |
| | )      (WO) |
| LABCORP, | ) |
| | ) |
|     Defendant. | ) |


## ORDER

Plaintiff Tisha Dickson, an African-American woman, brings this lawsuit against defendant Laboratory Corporation of America Holdings ("LabCorp") under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C.A. §§ 1981a, 2000e through 2000e-17) and the Civil Rights Act of 1866 (42 U.S.C.A. § 1981).[1] Dickson alleges that she was terminated because of her race. Jurisdiction over Dickson's claim is proper under 28

---

1. Pursuant to an order dated September 15, 2005 (Doc. No. 22), Dickson's claims for retaliation, hostile-work environment, and violation of the Family Medical Leave Act, 29 U.S.C.A. §§ 2601-2654, have been dismissed.

U.S.C.A. § 1331 (federal question), 28 U.S.C.A. § 1343 (civil rights), and 42 U.S.C.A. § 2000e-5(f)(3) (Title VII).

This case is currently before the court on LabCorp's motion for summary judgment. For the reasons that follow, the court will deny the motion.

## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>see also</u> <u>Fitzpatrick v. City</u>

of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993)
(discussing burden-shifting under Rule 56).  The non-
moving party must affirmatively set forth specific facts
showing a genuine issue for trial and may not rest upon
the mere allegations or denials in the pleadings.  Fed.
R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not
to weigh the evidence or to determine the truth of the
matter, but rather to determine only whether a genuine
issue exists for trial.  Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 249 (1986).  In doing so, the court must
view the evidence in the light most favorable to the non-
moving party and draw all reasonable inferences in favor
of that party.  Matsushita Elec. Indus. Co. v. Zenith
Radio Corp., 475 U.S. 574, 587 (1986).


## II. BACKGROUND

The following facts are construed in Dickson's favor
as the non-moving party: Dickson was hired by LabCorp as

3

a courier and promoted to phlebotomist (patient service technician) in July 2001.[2] On June 17, 2004, she and co-employee Ronnie Morgan were involved in an altercation. Morgan, who is white, started yelling at Dickson.  He was close enough to her that he was spitting in her face and his nose almost touched her.  Dickson told Morgan to back away from her on three occasions, the third time taking a step back herself.  When Morgan moved towards Dickson after she had taken a step back, she said that she would "knock [Morgan] out" if he did not "get out of [her] face."  Morgan was pulled away from Dickson by another employee and taken into another room to calm down.

Dickson called the branch supervisor, Suzanne Brink, and told Brink that she would "knock [Morgan] out" unless management did something to change his aggressive behavior.[3]  Brink then called Human Resources Manager

_____

2.  Plaintiff's brief in opposition to defendant's motion for summary judgment (Doc. No. 16), Deposition of Tisha Dickson, pp. 39-42.

3.  Defendant's evidentiary submission in support of motion for summary judgment (Doc. No. 14), Deposition of

4

Patrick Flanagan to inform him that Dickson had threatened to hit another employee. Flanagan asked Brink to keep him posted on any developments.[4]

After Brink spoke with Flanagan, Morgan complained to Brink that he felt intimidated by Dickson. Two eyewitnesses gave oral statements confirming that Dickson had threatened Morgan.[5] The next morning, Brink relayed the details of the altercation to Jacinda Elliot, Dickson's immediate supervisor, who had been out of the office the previous day. When Elliot and Dickson spoke later that morning, Dickson stated that if Morgan did not stay away from her she would "put him on his back."[6]

Elliot and Brink then called Flanagan and gave a more detailed report of the incident. Based on the information relayed to him by Elliot and Brink, Flanagan

--------

Tisha Dickson, pp. 68, 74, 83-85.

   4.   <u>Id</u>., Affidavit of Patrick Flanagan, ¶ 6.

   5.   <u>Id</u>., Deposition of Suzanne Brink, pp. 12-16.

   6.   <u>Id</u>., Deposition of Jacinda Elliot, pp. 22-24, 33.

decided to terminate Dickson.[7]   Later that day, Dickson was notified that she was terminated for violating the workplace violence policy.[8]  She was replaced by Christie Thornton, who is white.[9]

LabCorp's workplace violence policy provides, in relevant part:

> "POLICY
>
> LabCorp maintains a 'zero tolerance for violence' environment and will make every effort to prevent violent incidents from occurring. Violence, for our purposes, includes but is not limited to: physically harming another, (shouting, harassment and intimidation) that implies a threat of violence, shoving, pushing, coercion, brandishing weapons, and threats or talk of violence that would include any communication of violence.
>
> "PROCEDURES

---

7.   Id., Affidavit of Patrick Flanagan, ¶¶ 8-10.

8.   Plaintiff's opposition to defendant's motion for summary judgment (Doc. No. 16), Deposition of Tisha Dickson, pp. 93-94.

9.   Id., Affidavit of Patricia Bandy, ¶ 9.

6

> If any violence by an employee is
> displayed in the workplace (or threats
> of violence), that person may be subject
> to immediate termination."[10]

Prior to Dickson's termination, several white employees violated this policy during altercations with fellow employees but were not terminated.

Morgan and Bill Gates, a white employee, were involved in an altercation in which they threw objects at each other while yelling. In response to the commotion, Elliot came out of her office and told both employees to calm down. Neither employee was terminated.[11] On another occasion, Marie Williamson, a white employee, told Morgan that there would be a fight if Morgan did not leave her alone. Williamson was not terminated.[12] Morgan also threatened to throw another employee down an elevator

---

10. Defendant's brief in support of motion for summary judgment (Doc. No. 14), Exhibit 4, Workplace Violence Policy.

11. Plaintiff's opposition to defendant's motion for summary judgment (Doc. No. 16), Affidavit of Patricia Bandy, ¶ 7; Affidavit of Doris Cobb, ¶ 8.

12. Id., Deposition of Tisha Dickson, pp. 138, 141.

shaft during an argument.  Elliot overheard that comment and told Morgan that such a comment violated the workplace violence policy.  Morgan was not terminated.[13] Finally, Morgan once yelled and spit at Kristy Thornton, a white employee, while standing inches from her face. Thornton told Elliot, who had not witnessed the incident, that she would hit Morgan if Elliot did not tell Morgan to leave her alone.  Thornton was not terminated.[14]

## III. DISCUSSION

Under Title VII, it is illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's

---

13.  Id., Affidavit of Doris Cobb, ¶ 5.

14.  Id., Deposition of Tisha Dickson, pp. 141, 143.

race, color, religion, sex or national origin." 42

U.S.C.A. § 2000e-2(a)(1).[15]

Because Dickson has not presented direct evidence of

discrimination, this case is governed by the familiar

burden-shifting analysis of McDonnell Douglas Corp. v.

Green, 411 U.S. 792 (1973). Under the McDonnell Douglas

approach, a plaintiff has the initial burden of

establishing a prima-facie case of unlawful employment

discrimination by a preponderance of the evidence. Id.

at 802; Young v. General Food Corp., 840 F.2d 825, 828

(11th Cir. 1988). If the plaintiff establishes a prima-

facie case, the burden then shifts to the employer to

rebut the presumption by articulating legitimate, non-

discriminatory reasons for its employment action.

Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir.

2000). The employer has the burden of production, not of

---

15. Because Title VII and 42 U.S.C.A. § 1981 "have
the same requirements of proof and use the same
analytical framework," the court will "explicitly address
the Title VII claim with the understanding that the
analysis applies to the § 1981 claim as well." Standard
v. A.B.E.L. Servs., 161 F.3d 1318, 1330 (11th Cir. 1998).

9

persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced. See, e.g., Texas Dep't of Cmty Affairs v. Burdine, 450 U.S. 247, 253-55, 258 (1981); McDonnell Douglas, 411 U.S. at 802.

Once the employer satisfies this burden of production, "the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" Chapman, 229 F.3d at 1024 (citations omitted). The plaintiff may meet this burden by persuading the court that a discriminatory reason more than likely motivated the defendant or by demonstrating that the proffered reason for the employment decision is not worthy of belief. Burdine, 450 U.S. at 256; see also Young, 840 F.2d at 828.

LabCorp concedes for the purposes of this motion that Dickson can establish a prima-facie case of discriminatory discharge because: (1) she belongs to a protected group, (2) she experienced an adverse-employment action, (3) LabCorp replaced her with someone outside the protected class, and (4) she was qualified for her job.  Bogle v. Orange County Bd. of County Comm'rs, 162 F.3d 653, 656-57 (11th Cir. 1998).  LabCorp, however, claims that it fired Dickson because her threat to assault Morgan violated the workplace violence policy.

Although Dickson admits that she violated the workplace violence policy, she responds that LabCorp's proffered non-discriminatory reason is pretextual because several white employees at LabCorp violated the workplace violence policy but were not terminated.  See Pearson v. Macon-Bibb County Hosp. Auth., 952 F.2d 1274, 1280 (11th Cir. 1992) (holding that a plaintiff may prove discriminatory termination by showing that employees

11

outside a protected class committed similar disciplinary violations, but were not disciplined).  "To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that [she] and the employees are similarly situated in all relevant respects."  Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).  "[T]he quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."  Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999).

Dickson identifies four incidents, all involving Morgan and another white employee, in which Morgan or the other employee violated the workplace violence policy but was not terminated:

- The argument between Morgan and Gates that escalated into thrown objects.

- Williamson's threat to Morgan that she would hit him if he did not leave her alone.

- Morgan's threat to push an unidentified coworker down the elevator shaft.

- Thornton's statement to Elliot that she would hit Morgan if management did not stop his behavior.

LabCorp first argues that Dickson's comparator evidence is irrelevant because Flanagan, the decision-maker, did not know that Dickson was black.  To be sure, an employer cannot take an adverse employment action "because of" an employee's race if the decision-maker was unaware of the employee's race.  See Brungart v. BellSouth Telecommunications, Inc., 231 F.3d 791, 799 (11th Cir. 2000) (noting in the retaliation context that a plaintiff cannot prove causal connection between an adverse employment action and protected expression if the decision-maker was not aware of the protected expression when the adverse action was taken).  However, the conduct of supervisors who were not involved in a termination decision can be relevant in determining whether discrimination occurred.  See Jones v. Bessemer Carraway Med. Ctr., 151 F.3d 1321, 1324 n.5 (11th Cir. 1998). ("Depending upon the circumstances of a case, evidence

13

[involving] persons other than the final decisionmaker may be important in some employment discrimination litigation."). This is particularly true where high-level decision-makers base termination decisions on information provided by an employee's direct supervisor, who is racially biased. For example, the racial bias of a direct supervisor who reported misconduct to a disciplinary committee, which ultimately terminated an employee, is relevant if the supervisor previously had failed to report similar conduct by employees outside a protected classification. See Jones, 151 F.3d at 1323. Likewise, even if a supervisor is not involved in a decision to terminate an employee, that supervisor's racial bias is relevant when the actual decision-maker bases the termination decision on performance reviews written by the supervisor. See Herawi v. Ala. Dep't of Forensic Sciences, 311 F. Supp. 2d 1335, 1348 n.24 (N.D. Ala. 2004) (Thompson, J.).

Although Flanagan made the ultimate decision to fire Dickson, his decision was based <u>entirely</u> upon information conveyed to him by Elliot and Brink. Flanagan acknowledges that he terminated Dickson because he was informed by Brink and Elliot that Dickson threatened another employee in violation of the workplace violence policy. Essentially, in deciding whether to terminate employees under the workplace violence policy, Flanagan simply receives reports of altercations from supervisors, determines if the conduct violates the workplace violence policy, and terminates the offender if it does. Elliot and Brink's decisions to report an incident of workplace violence is the critical factor in whether a particular employee who has violated that policy is terminated. Accordingly, the proper pretext inquiry here is Elliot and Brink's decision not to report similar conduct of white employees to Flanagan. It is therefore necessary to determine if the incidents that Brink and Elliot

failed to report are nearly identical to Dickson's threat of violence.

LabCorp offers several reasons why they are not. First, LabCorp contends that no one in management was aware of the threats of violence or acts of violence attributed to the white employees.  If the supervisors were unaware that the white employees had violated the workplace violence policy, they certainly could not have known that discipline was warranted.  Accordingly, the incident involving Williamson is not nearly identical to Dickson's because no evidence suggests that Brink, Elliot, or any other supervisor was aware of Williamson's threat.  However, the evidence viewed in the light most favorable to Dickson reveals that either Brink or Elliot was aware of the incidents between Morgan and Gates,[16]

_____

16.  Although Elliot denies memory of any altercation between Gates and Morgan, the affidavits of Bandy and Cobb raise a genuine issue of material fact as to whether Elliot witnessed both employees throwing objects at each other.

Thornton and Morgan, and Morgan and the unnamed employee.

LabCorp contends that the incident involving Thornton should not be considered because Thornton did not threaten Morgan, but merely told Elliot that she would assault Morgan.  Although is not entirely clear why an employer would wish to punish threats of violence made in the heat of an argument but not those made after an employee has sufficient time to reflect and "cool off," the court will not second-guess LabCorp's decision to distinguish between the two because the "quality" of the conduct is different.  See Maniccia, 171 F.3d at 1368. Nonetheless, the Gates-Morgan encounter and Morgan's threat to throw another employee down an elevator shaft remain.

LabCorp contends that these two incidents are not nearly identical to Dickson's because Dickson admitted to Brink and Elliot that she had threatened Morgan.  LabCorp relies on Abel v. Dubberly, 210 F.3d 1334 (11th Cir.

17

2000), in which an employee who had been terminated for theft attempted to compare herself to another employee who had been accused of theft and not disciplined.  The court concluded that the misconduct was not nearly identical because the plaintiff admitted the wrong-doing, while her alleged comparator denied it.  Id. at 1339. Abel is readily distinguished from the case at bar because the supervisor was not certain the comparator had committed the theft, while Abel's admission dispelled any doubt that she was guilty.  In contrast, Brink witnessed the Gates-Morgan incident and Elliot overheard Morgan's threat to push a coworker down an elevator shaft. Essentially, Dickson's white coworkers were caught red-handed in their violations of the workplace violence policy, so an admission was unnecessary.  Only Dickson had any need to admit her misconduct because supervisors did not witness her threat to Morgan.  While the court is constrained to compare "apples to apples," see Maniccia, 171 F.3d at 1368, distinguishing Dickson's misconduct on

18

such grounds is patently unreasonable under the circumstances.

LabCorp also argues that these two incidents are not nearly identical because Dickson's threat was reported to Brink, while the other two incidents were not reported to a supervisor.  This distinction is without substance for the same reason that Dickson's admission is irrelevant: the need to report conduct to a supervisor is superfluous when the supervisor witnesses it.  In fact, the workplace violence policy's reporting requirement is clearly premised on the assumption that a supervisor did not witness the act of violence.[17]  Although it is arguable that a reasonable employer could deem Dickson's threat to be more "serious" because Morgan told his supervisor that he was actually intimidated, Brink reported the incident to Flanagan <u>before</u> she had spoken to Morgan.  Thus,

---

[17].  The workplace violence policy states: "Prompt and accurate reporting of all violent incidents, whether or not physical injury has occurred, is required." Defendant's brief in support of motion for summary judgment (Doc. No. 14), Exhibit 4, Workplace Violence Policy.  Such an admonition is obviated by witnessing.

19

Dickson's incident was treated differently before this arguable distinction even came to the attention of her supervisor.

Finally, the incident between Gates and Morgan was not a threat of violence, but an actual incident of violence.  Throwing objects at a coworker is a greater danger to physical safety than mere threats of doing so. The requirement that misconduct be "nearly identical" cannot be taken too literally.  For example, a completed assault is not nearly identical to a threatened assault, because one is more serious than the other.  Nonetheless, an employer would not be justified in punishing the less serious conduct while ignoring the more serious offense. Here, Dickson's threat was reported while the actual physical altercation between Morgan and Gates was not. LabCorp has failed to adequately explain the reason for this disparate treatment of white employees.

In sum, the evidence viewed in the light most favorable to Dickson reveals that Elliot and Brink were

aware of, and failed to report to Flanagan, similar misconduct of white employees.  LabCorp's attempts to distinguish the Morgan-Gates incident and Morgan's elevator-shaft threat from Dickson's threat of violence are beset by logical inconsistencies.  Accordingly, the court concludes that a reasonable fact-finder could find that the different treatment was "because of" Dickson's race and LabCorp's proffered reason is pretextual.


## IV. CONCLUSION

For the foregoing reasons, it is ORDERED that defendant Laboratory Corporation of America Holdings' motion for summary judgment (Doc. No. 12) is denied.

DONE, this the 18th day of October, 2005.


                        /s/ Myron H. Thompson
                    UNITED STATES DISTRICT JUDGE